Mellon, No. 18-3247. Thank you. Good afternoon. I'm Joseph Sevely, representing myself, regarding the motion to dismiss my long-term disability case. First, I want to say there's absolutely no dispute that I became legally blind in June 2015 while actively employed and covered by the disability plan. In fact, Prudential even acknowledged that I was unable to work due to that condition. What is in dispute is that I somehow become ineligible for benefits because I was notified at the end of 2014 that at some undetermined point in the future I would be, my position would be eliminated in a reduction in force. The district court correctly determined that my case was subject to de novo review, but failed to apply that standard in deciding my case. Defendants argued that I was ineligible for benefits in June 2015 because even though I was legally blind and was, my employer told me I could stay at home, the employer continued to pay my full salary. You were working. You were working from home or? I was doing those aspects of my job that I was still able to do, but it was greatly reduced from what I could do before. So I was still receiving my full salary, and they said they did not meet the definition of earnings loss under disability. When my employer eventually stopped paying my salary, they argued that at that point I was no longer actively employed and therefore not entitled to benefits. Well, the problem with that is it's a complete catch-22, not just for me, but for anybody who is totally disabled, because the definition of being disabled and actively employed are mutually exclusive. To be disabled, you had to be unable to work and have a loss in earnings. To be actively working, actively employed, you had to be working and still being paid by your employer. So regardless of why you stopped working, whether it was a reduction in force, you quit, you fired, you filed for short-term disability, in any of those cases, according to defendant's interpretation, you'd be ineligible for benefits. There's no causation requirement that the reason that one is terminated is because of the disability? There's a requirement that your loss of earnings has to be due to your disability. In my case, Prudential conceded that I was unable to work due to my disability in their appeal letter, which was cited in paragraph 46 of the complaint, and I think it's a very short hop from going from unable to work to having a loss of earnings. So what I did was to represent, suggest what I think is a much more reasonable interpretation of the plan, which is to qualify for benefits, you have to suffer the disabling condition while actively employed, as I did, and that has to lead to your loss of earnings, as it did in my case. But the district court failed to even consider that interpretation, even though it was subject to de novo review. Loss of earnings was attributed to the reduction in force, on the theory that it would have taken place whether you suffered a disability or not? That's what the district court determined, and I would say the primary reason for my loss of earnings was because I became blind and unable to work. I would have had to stop if I thought there had been a reduction in force. Conversely, if there had been a reduction in force and I was not blind, I easily could have gotten another job, and nobody would allege that they were entitled to disability benefits merely because there was a reduction in force. So my argument is the reason I lost my earnings was due to my blindness and my disability. Was it open to you earlier, when your vision became so impaired, to work with your employer and either reduce your workload or declare your disability? Were you eligible for any other benefits at that time? I'm perplexed that you stayed on at full salary, you continued to work, and we can't rewrite the plan, nor could the district court. The plan is the plan. And you were, you acknowledged that you were terminated because of reduction in force and not because of your disability. So it's, it's, you're in a difficult position, I think. Right. So I had a progressive disease and I, that started when I was a teenager, progressed to the point that I became legally blind in June 2015. At that point, I continued to be paid, because my employer agreed to pay my, my full salary, although they greatly reduced what I had to do and let me stay from home for doing that. Also, at the same time, I informed my employer that I wanted to preserve my rights to seek long-term disability benefits, and there was a tension between separation agreement, which initially had a full waiver of all claims, including disability claims. So if I, if I just accepted that, you know, initially I couldn't get both the separation agreement and the disability claim, but my employer agreed to remove that waiver from the requirement that would allow me to seek both. They didn't do that until actually the last day that they paid me, which was August 31st. This may not be on the record, but did you consult with the human resources people at your employer and say, what, what can I do to preserve my stream of income? Well, but at the point that I Because all I had to do was to say, well, we need to cut your salary by 30 percent, and then after that, terminate you. Your Honor, at that point, in June 2015, when I became legally blind and unable to work, I had already been informed that at a point in the future, my position would be eliminated. So it really wasn't up to reconsideration. So going to human resources and asking for accommodations at that point wasn't very fruitful. But I had previously disclosed to my employer before my initial employment in 1999 my condition, and they did provide accommodations during the course of my employment. So they were well aware of my disability and frankly were very accommodating, which allowed me to continue to work from 1999 until 2015, when I became legally blind. Okay. You have reserved a minute for rebuttal. We'll hear from Ms. Sonneborn. Thank you, Your Honors. May it please the Court, Amanda Sonneborn of Cypher Shaw on behalf of Defendants Bank of New York, Mellon Plan and Prudential Insurance Company of America. Your Honors have captured the crux of this matter, and plaintiff quite or an appellant, quite frankly, throughout his oral argument, identified essentially here he is trying to recover both severance benefits and long-term disability benefits. The plan expressly requires that the individual suffer a loss of income due to their disability in order to receive the benefits under the plan. It's an income replacement plan. The whole purpose of the employer offering these benefits is that if you cannot work because of your disability, they will provide you those benefits. So was it open then to Mr. Sevely to say, I have to work less, I'm going to work 60% or 50% or whatever, reduce my salary that amount, and I'm putting in for disability? Correct. He could have applied at any point in time when he became disabled, for example, in June, and made a claim at that point in time. In terms of the alleged catch-22 under the plan... I mean, as I understand it, there's a sequence here. After the disability onset, there has to be a reduction in salary of 25% or more, and then you get replacement. But then there has to be termination after that. There doesn't have to be termination, Your Honor. So many employers often keep people actively employed as an employer. What if there is termination after that? If the termination is due for another reason, and the person is already on benefits, that termination wouldn't occur. So in this particular circumstance, for example, he would not have been terminated under the RIF because he would have been protected. Suppose, just hypothetically, not this case, an employee develops a disability, does not have a reduction in salary, but is terminated because that person can no longer perform the essential duties of the job. Is there disability payments? In those particular circumstances, Your Honor, there may be, but in this particular... Well, what would be the moving part here? So under that particular circumstance, they would have to articulate when they lost the income and when it was connected to when they, in fact, had the loss of income based in contact with the disability. Here, there's no question... You're talking about loss of income. I'm talking about termination. Because the loss of income is... Termination, which of course is a loss of income, but no incremental loss of income before that. Under that circumstance, no, they wouldn't qualify. The plan requires the loss of income in order to qualify for benefits under the plan. You have to lose, you have to have the employer cut your salary before you're terminated. You have to be unable to... And then when you're terminated, what do you get in the way of benefits? You would get 60% of your income replaced under the terms of the insurance plan. The income replacement, which would be 100%, 60% of 100%. Correct, Your Honor. So the individual has to be unable to work. Otherwise, you can receive double recovery, right? The whole point of the insurance, remember, we go back to the basic concepts of ERISA, which ERISA is not a mandate statute. No employer is required to provide an ERISA. I'm just trying to find out whether the coverage here is largely illusory. No, Your Honor. There are thousands and thousands of people who qualify for the coverage every day. And most often, the times we are in front of this court arguing about are whether or not they meet the definition of disability. There's no question about whether or not, in fact, they suffered the loss of income. That is why we moved to dismiss on this case because it was such a clear-cut basis that he, in fact, had not met the terms of the plan, which is what the court is required to enforce here. But I understand you say that if you lose all your income by termination without having your salary having been cut before that, then you don't get disability payments even if you're terminated because you can no longer perform your job. If there is a connection between the basis for the termination and the reason why you were terminated. And here, there is not that connection. Mr. Sevely was terminated because he was severed in a reduction in force. If, hypothetically, he had not been severed in a reduction in force, but had retired or been invited to leave or was, in any event, terminated because of his disability and had no reduction in his salary up until then, then he would have gotten the benefit. And he potentially would qualify, and there are many other cases that have held that in those circumstances, but that's not the circumstances we have here. Mr. Sevely knew he was going to be subject to a reduction in force in June. The complaint alleges that going back into the previous year, he knew in November when his entity was acquired by Bank of New York Mellon that there was, in fact, going to be a reduction in force. He continued to work and receive his salary and met the terms and conditions of his employment during that full time and then, at the end, attempted to both capture severance and income replacement. The plan expressly actually carves out anybody who's receiving severance for this purpose because the intent is to compensate individuals who lose their employment because of their inability to work to their disability, not because there are some other business-related issue that results in a reduction in force that leads to their elimination of their job. But he was paid severance. Correct. He was paid severance. He admits that in his complaint, that he received severance benefits under the terms of a severance plan. And he essentially is trying to capture both the severance benefits and the disability benefits, which would both be replaced in income for the exact same time period. The purpose of severance is to recover for time that you are laid off from your position and to pay you for your salary for that period extending out from when you were laid off. Disability benefits are intended to replace your income. Those are not two analogous benefits because severance is usually payable while one goes to find another position, whereas disability implies you're not going to find another position. But the intent of both is to replace income. The reason for the loss of income is different. So, for example, with regard to the loss of... It implies future income. Correct. And so the loss of income due to disability, that's what the disability insurance policy pays for. The loss of income due to a layoff is what the severance pays for. But he would essentially be recovering at the same time for that same loss. That's why the rule exists that you can't be actively working and being paid and receive disability benefits because the employer is offering a benefit to insure against the fact you don't receive income. Here, he was receiving income in the form of severance benefits and he was arguing that he should also at the same time receive disability benefits for that loss of income. It would essentially allow him to double dip and recover twice for the same loss of income, which is not the intent of the ERISA plan. The ERISA plan is intended to compensate... Disability payments would go on and on and on, whereas the severance... I don't know how much it is. It's none of my business. But the severance usually is compensation for loss of income in an interim until one gets the next employment. And similarly, disability benefits are for a particular position or for particular qualifications, and they have to maintain ongoing ability to show that they are disabled. They would also have to show under this particular policy that they are unable to do this position and then that they are unable to do any work in the greater population. So there are different cutoffs under the disability plan as well that would have to continue to be met at various time points. Hypothetically, if he knew that his position was going to be terminated because of a reduction in force, his employer could nevertheless have said, well, it's a much better deal for you. We'll terminate you. We'll terminate you, and you'll get your disability. Rather than... It's almost like the employer's election not to pay the disability, even though he was disabled, but instead to pay the severance. Your Honor, I would argue here it was, in fact, Mr. Sevely's decision to take the severance benefits and not to apply for the terms of the plan. But what choice does he have? If he's not being fired because of his disability and he's permitted to stay at home and do those parts of his job that he could do, then he couldn't resign and get the disability. He could do what virtually every other person under a disability program in America does, which is to say, I cannot work, and have a note from their doctor that they submit that says I cannot perform the functions of my job as required, and therefore I'm eligible to disability benefits. And that's what every single disability case that comes before this Court, there will be a doctor's note and a letter attesting from the person. But there's no dispute that he was unable to do the main portions of his job. He couldn't even come into work. He was working at home. Many people work from home, and many people, in fact, don't do any portions of their job. He continued to do the portions he could do. He admits that in the complaint, and he continued to receive compensation for that. The vast majority of cases that are granted and the ones that are denied relate to individuals who come and say, I can no longer do my job, and here is my doctor's note attesting why I cannot do my job. And if the employer does not terminate them? They still can qualify for benefits. And the vast majority of time, they don't terminate them under those circumstances. All right. Thank you very much. Thank you. Mr. Settle, you have one minute. Sure. First, there's nothing in the plan that draws a connection between being terminated and your disability. The requirement under disability definition is that you have a reduction in income due to your disability, which absolutely was my case. I was blind. I was unable to work. And as a direct result of that, I had a loss of income. There might be a secondary reason, which was the reduction in force, but there was no question that it was due to my disability that I had a reduction. And did you receive a severance payment? I did receive a severance payment, yes. And as I said, Bank of New York specifically agreed to waive, to not make me sign the waiver, to release the disability claim. And I also presented in my complaint that Prudential had waived their argument about receiving disability, receiving the separation agreement, because they failed to raise that argument when they first denied my claim. And I presented the case evidence that says that they can't come back later with a secondary reason. Additionally, in my brief, I argued why that was not a double dip, because I think what the plan says is that you cannot file for disability while you are receiving severance payments. I filed for disability as of June 5, 2015, while I was actively employed. Very good. Thank you. We have your papers. We'll review them. We'll take the matter under advisement. And that concludes our oral argument calendar today. The clerk will please adjourn. Clerk, please adjourn.